**UNITED STATES of America, Appellee,**

v.

**NINETY ONE THOUSAND NINE HUNDRED SIXTY DOLLARS ($91,960.00), Luis Mario Rosario, Claimant, Appellant.**

No. 89–1335.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1989.

Decided March 14, 1990.

Daniel P. Reardon, Jr., Clayton, Mo., for appellant.

Daniel E. Meuleman, St. Louis, Mo., for appellee.

Before FAGG, Circuit Judge,
HEANEY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Luis Rosario appeals the district court's[1] judgment subjecting $91,960.00 in seized currency to forfeiture as drug proceeds under 21 U.S.C. § 881(a)(6) (1982). Rosario contends that the judgment should be reversed because DEA agents seized the money in violation of his fourth amendment rights and because the Government failed to demonstrate probable cause for connecting the seized money to the exchange of controlled substances. We affirm.

## I.  BACKGROUND

On March 19, 1987, at about 6:30 a.m., airport security officers at St. Louis International Airport, acting in accordance with standard procedure, asked Rosario to open his briefcase for inspection as he passed through a security checkpoint. The security officers observed a large amount of currency covered by papers and torn yellow pages from a phonebook. The security officers passed Rosario through the checkpoint but then notified DEA agents Darrell Skaggs and Lloyd Patterson of the incident.

Skaggs and Patterson then located Rosario playing a pinball game in the company of a woman at an alcove of the airport. The agents identified themselves and both Rosario and the woman consented to questioning. The woman stated to the agents that Rosario had been visiting her family in St. Louis but that she knew nothing of his business or his money. She inquired whether she was under arrest, and, upon receiving a negative answer, left the area.

The agents then asked Rosario if he would be willing to produce identification. Rosario replied affirmatively and produced a Texas driver's license as well as an airline ticket from St. Louis to El Paso, Texas, showing a purchase for cash in the name of Tom Harris. Rosario stated that the ticket had been purchased for him and that he was unaware that the wrong name appeared on the ticket.

The agents then asked Rosario for permission to inspect his briefcase. Rosario gave his consent and, while fumbling with the lock on the briefcase, admitted that the case contained money. Rosario gave several explanations for the money: (1) that it was to be used to buy a business in St. Louis; (2) that it represented profit from the sale of his business (a nightclub) in El Paso; and (3) that it constituted his life's savings which he carried on his person because of a distrust of banks.

Rosario finally unlocked the briefcase and gave the agents permission to inspect the contents. The briefcase contained yellow pages from a phonebook on top, United States currency underneath and a notebook. The agents, with Rosario's consent, examined the notebook. It contained scribbled notations of names and figures, which, according to the DEA agents, appeared to be records of drug transactions. The agents also found a price tag in the briefcase. Rosario stated that he had just bought the briefcase in St. Louis, even though he told the agents earlier that he brought the briefcase with him from Texas.

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

Rosario then agreed to accompany the DEA agents to the airport police station for further questioning. There the agents ran a record check on Rosario which disclosed two prior arrests, one for heroin possession. Rosario had earlier stated that he had never been arrested for any drug offense. At this point, the agents decided to seize the money and initiate forfeiture proceedings. The agents counted the money in Rosario's presence and found that it totalled $91,960.00. The agents gave Rosario a receipt for the money and he left the area. A subsequent sniff test of the briefcase by a police dog indicated that the briefcase had been near narcotics.

The Government subsequently instituted this *in rem* action, alleging that the money seized constituted proceeds traceable to an exchange of controlled substances and was therefore subject to forfeiture under 21 U.S.C. § 881(a)(6). In response, Rosario filed a claim for the money.

At trial,[2] the Government introduced the testimony of DEA agents Skaggs and Patterson relating their encounter with Rosario. Both agents testified that Rosario could have left at any time but probably would not have been permitted to take his briefcase. The agents also testified that Rosario consented to the entire encounter. Additional testimony indicated that the agents confiscated the money because Rosario used a name different from his own on his plane ticket, because the ticket was one-way to Texas and was purchased with cash, because the briefcase contained a notebook apparently listing drug transactions and because of the conflicting statements made by Rosario.

The district court found that Rosario consented to the encounter and that DEA agents Patterson and Skaggs had probable cause to seize the money. The court determined that Rosario failed to establish any defense to the forfeiture and that the totality of the evidence supported the forfeiture. This timely appeal followed.

## II. DISCUSSION

Rosario raises two issues on appeal: (1) that the trial court erred in admitting evidence of the airport encounter with the DEA agents because the agents violated Rosario's fourth amendment rights; and (2) that the Government failed to establish probable cause for the forfeiture. We reject both contentions.

### A. Search and Seizure

On the fourth amendment issue we must determine whether the evidence of the airport encounter resulted, as the Government claims, from a consensual dialogue or, as Rosario claims, from a search and seizure lacking probable cause or reasonable suspicion.

■ As a threshold matter, we note that the government bears the burden of proving voluntary consent to accompany officers to a police office. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980). This issue of voluntary consent is determined in light of the totality of all the circumstances. *Id.; Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Additionally, we recognize that if Rosario's airport encounter with the DEA agents amounted to a nonconsensual investigatory stop, the Government would have to prove adequate grounds for detaining him; otherwise, the fruits of that detention would be inadmissible. *See generally United States v. Nunley*, 873 F.2d 182, 184–86 (8th Cir.1989).[3]

---

**2.** At the time of trial, Rosario was serving a federal prison sentence for one count of conspiracy to possess marijuana with the intent to distribute. This sentence resulted from Rosario's arrest during 1988 in New Mexico en route to St. Louis while towing a U–Haul trailer containing 330 pounds of marijuana. Rosario pleaded guilty to the charge.

**3.** We note, however, that Rosario does not contend that fourth amendment considerations required Skaggs and Patterson to obtain a warrant before confiscating his briefcase. We therefore do not address the propriety of warrantless seizures in the forfeiture context. *Cf. United States v. One 1975 Pontiac Lemans*, 621 F.2d 444, 449–51 (1st Cir.1980).

No litmus-paper test exists for distinguishing a consensual encounter from a seizure or for determining when a seizure exceeds the boundaries of an investigatory stop. *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (plurality). As the Court stated in *Royer:*

> Even in the discrete category of airport encounters, there will be endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence or a paragraph a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment.

*Id.* at 506–07, 103 S.Ct. at 1329.

█ Not every police-citizen encounter triggers fourth amendment scrutiny. *United States v. Moore*, 872 F.2d 251, 252 (8th Cir.1989). Where a police officer merely approaches an individual in a public place, identifies himself and asks the individual to produce identification and answer questions, a consensual conversation is present. *Royer*, 460 U.S. at 497, 103 S.Ct. at 1324; *United States v. Bennie Ree White*, 890 F.2d 1413, 1416 (8th Cir.1989); *Nunley*, 873 F.2d at 184; *United States v. Sadosky*, 732 F.2d 1388, 1392 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984). "As long as the person to whom questions are put remains free to disregard the questions and walk away," no intrusion requiring fourth amendment scrutiny occurs. *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877.

█ Indeed, a consensual encounter may be transformed into a *Terry*-type stop "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (footnote omitted). In such a case, the investigatory stop must be supported by a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

Factors to consider when making the determination whether the consensual encounter ripened into a *Terry*-type stop include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the [person's body] ..., the use of language or tone of voice indicating that compliance with the officer's request might be compelled," *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877, the officer's retention of the person's airline ticket or driver's license, *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir.1988), and the officer's statement to the person that he is the particular focus of a narcotics investigation, *Nunley*, 873 F.2d at 185.

█ After reviewing the record, we determine that the record supports the district court's conclusion that Rosario consented to the encounter with DEA agents Skaggs and Patterson. The initial encounter occurred in the public airport concourse and lasted only minutes. Skaggs and Patterson never intimidated Rosario by touching him or by displaying a weapon. Further, they did not retain Rosario's ticket or driver's license or tell him that he was the focus of a narcotics investigation. Significantly, the agents permitted Rosario's female companion to leave upon request.

Moreover, the evidence does not support Rosario's assertion that Skaggs and Patterson used a coercive tone of voice or manner during the encounter to force him to open the briefcase or accompany them to the airport police office. In addition, although it is apparent from the deposition transcript that Rosario had some difficulty with the English language, we note that the same transcript indicates that Rosario has lived and worked in the United States for over twenty-five years and therefore cannot be described as a stranger in the land. Thus, the scenario in this case is distinctly different from that in *Nunley*, 873 F.2d at 184–85, where this court properly observed that the initial consensual encounter subsequently became a detention of the person. Accordingly, the district court did not err in

finding that Rosario's encounter with Skaggs and Patterson was consensual in nature and did not ripen into an investigatory detention.

## B. Probable Cause For Forfeiture

Rosario contends the district court erred in concluding that the Government met its burden of proving probable cause to support the forfeiture. He asserts that the finding of probable cause of a substantial link between the money and any drug transaction is pure conjecture.

■ Under 21 U.S.C. § 881(a)(6), money used in, intended for use in or traceable to a drug transaction is subject to forfeiture.[4] In a forfeiture proceeding, the government bears the initial burden of proving probable cause to connect the property involved in the forfeiture proceeding to some form of criminal wrongdoing. 21 U.S.C. § 881(d) (1982); 19 U.S.C. § 1615 (1982 & Supp. II 1984); *United States v. Thirteen Thousand Dollars in United States Currency*, 733 F.2d 581, 584 (8th Cir.1984). Once probable cause is established, "the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture, or that a defense to forfeiture applies." *One Blue 1977 AMC Jeep CJ–5 v. United States*, 783 F.2d 759, 761 (8th Cir.1986).

■ Probable cause exists where a reasonable belief of guilt is supported by more than a mere suspicion but less than

prima facie proof. *United States v. Twenty–Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), United States Currency*, 709 F.2d 442, 446–47 (6th Cir. 1983). Circumstantial evidence of drug transactions, *see United States v. $93,685.61 in United States Currency*, 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984), and the discovery of a large sum of money, unexplained and in conjunction with the presence of drug paraphernalia, may constitute evidence of probable cause, *United States v. $38,600.00 in United States Currency*, 784 F.2d 694, 698 (5th Cir.1986). Finally, evidence to support the probable cause determination includes not only evidence obtained before the seizure of the property subject to forfeiture but also evidence obtained up until the point at which the government institutes forfeiture proceedings. *United States v. Monkey*, 725 F.2d 1007, 1011 (5th Cir. 1984).[5]

Here, the district court found that the Government established probable cause and that Rosario failed by a preponderance of the evidence to establish a defense. This finding of probable cause must be upheld unless it is clearly erroneous. *Thirteen Thousand Dollars*, 733 F.2d at 584.

■ After reviewing the record, we conclude that the district court's probable cause determination is not clearly erroneous in light of the many factors contributing to probable cause in this case. Skaggs and Patterson observed a large amount of money concealed in a briefcase beneath

---

4. 21 U.S.C. § 881(a)(6) (1982) provides in part:
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   . . . .
   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

5. Whether the Government possessed probable cause at the time of seizure affects only the admissability of the evidence obtained through

the seizure. *United States v. Monkey*, 725 F.2d 1007, 1011 (5th Cir.1984). Had the money in this case been seized in violation of the fourth amendment, it would have been excluded as evidence at trial but remained subject to forfeiture if the Government could establish probable cause through untainted evidence. *United States v. United States Currency $31,828*, 760 F.2d 228, 230 (8th Cir.1985); *United States v. Eighty–Eight Thousand, Five Hundred Dollars*, 671 F.2d 293, 297 (8th Cir.1982). Because we determine that no fourth amendment violation occurred, we need not decide whether the Government presented sufficient untainted evidence to support a probable cause determination.

torn phonebook pages. The briefcase also contained a notebook that appeared to be a record of drug transactions. Rosario provided inconsistent explanations concerning the presence of the money, the purchase of the briefcase and his arrest record. In addition, Rosario's one-way airplane ticket had been purchased with cash and contained a passenger name different from Rosario's. Moreover, the police dog sniff test indicated that the briefcase had been near narcotics. Lastly, Rosario's conviction one year later for distribution of marijuana intended for St. Louis gives rise to an inference that Rosario was involved in an earlier similar scheme. These facts provided a reasonable belief of guilt supported by more than mere suspicion but less than prima facie proof.

We also conclude the district court did not err in determining that Rosario failed to shoulder his burden of proving that the money was not used in, intended for use in or traceable to a drug transaction. Therefore, the money was properly forfeited to the United States.

## III. CONCLUSION

For the reasons given above, we affirm the judgment of the district court.