**UNITED STATES of America, Appellant,**

v.

**U.S. CURRENCY, IN THE AMOUNT OF $150,660.00, Defendant,**

**Randy C. Johnson, Appellee.**

**No. 92–1523.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Dec. 2, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 13, 1993.

Francis Elaine Reddie, Asst. U.S. Atty., Kansas City, Mo., argued, for appellant.

Bruce W. Simon, Kansas City, Mo., argued (Austin F. Shute, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

The United States appeals from an order dismissing its civil forfeiture complaint for failing to meet the particularity requirement of Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. We reverse.

I.

On July 30, 1991, the United States filed a complaint for civil forfeiture *in rem* against $150,660 in U.S. currency that was recovered from Randy C. Johnson. The complaint alleged that the defendant currency was subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).[1] The complaint, along with an incorporated affidavit, stated the following facts.

At 12:55 A.M. on April 24, 1991, Randy C. Johnson, a forty year-old caucasian male, entered the Amtrack Train Station in Kansas City, Missouri. He was carrying a garment bag, a shoulder bag, and a briefcase. As Johnson was about to board a departing train, Detective Darwin Dupree of the Kansas City Police Department approached him. Detective Dupree identified himself as a police officer working interdiction activities at the train station. Detective Dupree then asked Johnson if he could talk with him and see his train ticket. Johnson showed Detective Dupree a one-way ticket (purchased with cash) to Phoenix, Arizona.

With Johnson's permission, Detective Dupree searched Johnson's luggage. Af-

---

1. Twenty-one U.S.C. § 881(a)(6) provides that the following items are subject to forfeiture to the United States:

All moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter....

Tracking the language of § 881(a)(6), the complaint alleged:

The defendant property was furnished or intended to be furnished in exchange for a controlled substance in violation of subchapter I of Chapter 13, Title 21, United States Code, is a proceed traceable to such an exchange, or was used or intended to be used to facilitate the commission of a violation of subchapter I of Chapter 13, Title 21, United States Code; and, therefore, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

Compl. at ¶ 6.

ter searching the garment and shoulder bags, Detective Dupree opened the briefcase and observed three packages, neatly wrapped in brown paper, and one large brown envelope. Johnson told Detective Dupree that the packages and the envelope contained $100,000 that he had won three or four years earlier at the dog and horse races in Omaha, Nebraska. Johnson said that he had withdrawn the money about a month earlier from his checking account at Merchants Bank in Kansas City. He did not, however, have a withdrawal slip or any other documentation to verify where he had gotten the money. He further stated that he was on his way to Las Vegas to gamble. According to his train ticket, however, his train was not stopping in Las Vegas.

After receiving Johnson's consent, Detective Dupree opened the smallest of the three wrapped packages. He observed that the package contained old-looking $20 bills stacked together, but not secured with money wrappers. He further noticed that the currency emitted a strong odor resembling dry marijuana. Detective Dupree looked inside the unsealed brown envelope and saw that it also contained old-looking bills.

Johnson then told Detective Dupree that he was employed with Johnson and Associates in Kansas City. He stated that he was the firm's only employee and that he worked from his residence. He indicated that he earned between $4000 and $5000 a month selling microcurrent electro therapy devices to doctors. He said that his business phone number was 826–931–0063.

Detective Dupree informed Johnson that he was recovering the currency and turning it over to the Seizure/Forfeiture Unit of the Kansas City Police Department until it could be determined whether Johnson had obtained the money legally. Detective Dupree also recovered thirty-five $20 bills that Johnson had in his pants pocket. Detective Dupree then took the currency to the Drug Enforcement Unit, where a count revealed a total of $150,660: $149,960 from Johnson's briefcase, plus the $700 from his pocket.

Eight hours after the currency was recovered, it was taken to the Kansas City Police Department's K–9 Unit. A narcotics detection dog conducted a sniff search of the currency and indicated the presence of a controlled substance on it.

On May 16, 1991, the Kansas City Police Department referred the currency to the Federal Bureau of Investigation for federal forfeiture proceedings. The next day the FBI subpoenaed all of Merchants Bank's records and account information pertaining to Johnson for the period of 1988 through April 1991. Merchants Bank's records indicated that Johnson had a checking account, a savings account, and a safe deposit box at the bank. The checking account records indicated that since December 19, 1988, the account had never had a balance greater than $5680. The account had a balance of $28 on July 26, 1989; thereafter, it was inactive and consequently was closed in February 1990. From 1988 through 1990, Johnson's savings account never had a balance greater than $575.86. The last statement, dated December 31, 1990, indicated a balance of $28.86. The bank records further indicated that Johnson had not opened his safe deposit box since October 27, 1990.

The FBI also subpoenaed Southwestern Bell Telephone Company, requesting information regarding the telephone number 826–931–0063, the number Johnson had given for his firm, Johnson and Associates. Southwestern Bell advised the FBI that 826–931–0063 was assigned to Johnson and Associates on August 13, 1987, but was disconnected on August 7, 1989.

After obtaining this information, the FBI referred the case to the United States Attorneys Office, which filed the complaint for forfeiture *in rem* on July 30, 1991. Upon filing the complaint, the government submitted the complaint and the supporting affidavit to a United States magistrate judge.[2] In an order dated July 30, 1991,

---

**2.** The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri.

the magistrate judge concluded that there was probable cause to believe that the defendant currency was subject to seizure and forfeiture.

On July 31, 1991, Johnson filed a claim for the currency. Also on that date, Johnson filed a motion to strike the government's complaint, alleging that the facts set forth in the complaint did not meet the particularity requirement of Rule E(2)(a). On December 11, 1991, the district court granted Johnson's motion and struck the government's complaint. On December 19, the district court entered an amended order directing the government to return the currency to Johnson. On January 22, 1992, the district court stayed its decision pending appeal.

This appeal followed.

## II.

On appeal, the United States argues that the complaint along with the supporting affidavit satisfies the particularity requirement of Rule E(2)(a).

### A. Standard of Review

 Whether the complaint, including the incorporated affidavit,[3] contains sufficient allegations to comply with the particularity requirement of Rule E(2)(a) is an issue of law subject to plenary review. *United States v. 2323 Charms Rd.*, 946 F.2d 437, 442 (6th Cir.1991); *United States v. 3097 S.W. 111th Ave.*, 921 F.2d 1551, 1554 (11th Cir.1991) (citing *Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir.1989).

### B. Legal Standard

 A complaint for forfeiture *in rem* under 21 U.S.C. § 881(a) is subject to the particularity requirement of Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. 21 U.S.C. § 881(b). Supplemental Rule E(2)(a) provides:

(a) Complaint. In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Rule E(2)(a) imposes a more demanding pleading standard than do the Federal Rules of Civil Procedure. *See, e.g., 2323 Charms Rd.*, 946 F.2d at 441; *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1216 (10th Cir.1986). Under Rule E(2)(a) the government cannot merely notice plead, as a claimant must be able to respond to the complaint with more than a general denial. *$39,000 in Canadian Currency*, 801 F.2d at 1216. In short, the particularity requirement is "designed to assure that the forfeiture complaint apprises potential claimants of the circumstances which support the government's contention that there is probable cause to believe that the defendant property was *connected with* illegal drug activity, thus enabling claimants to commence an investigation of the facts and to frame a responsive pleading." *United States v. One Parcel of Real Property*, 921 F.2d 370, 375 (1st Cir.1990) (citations and internal quotations omitted).

 Although this court has not stated the legal standard for a complaint filed pursuant to section 881(a), several circuits have held that "a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture." *2323 Charms Rd.*, 946 F.2d at 441 (6th Cir.); *3097 S.W. 111th Ave.*, 921 F.2d at 1554–55 (11th Cir.); *United States v. Pole No. 3172*, 852 F.2d 636, 638 (1st Cir.1988); *see also $39,000 in Canadian Currency*, 801 F.2d at 1219 (10th Cir.) (holding that a section 881(a) complaint "must allege specific facts sufficient to support an inference that the property is subject to forfeiture...."). As this standard recognizes, Rule E(2)(a) does not require the government to meet, at the pleading stage, its ultimate trial burden of

---

**3.** In deciding whether a complaint meets the particularity requirement of Rule E(2)(a), a court can consider the attached affidavit. *See,* *e.g., United States v. Parcels of Land,* 903 F.2d 36, 48 (1st Cir.1990).

showing probable cause for forfeiture; rather, the government's complaint must establish only a reasonable belief that the government can show probable cause for forfeiture at trial.[4] *2323 Charms Rd.*, 946 F.2d at 441. In other words, "the complaint need not allege facts sufficient to support 'a reasonable belief that specific property is tainted,' but facts sufficient to support a 'reasonable belief that the government [can] demonstrate *probable cause'* for finding the property tainted." *One Parcel of Real Property*, 921 F.2d at 376 (emphasis added in original) (quoting *Pole No. 3172*, 852 F.2d at 640).

Citing *3097 S.W. 111th Avenue*, 921 F.2d at 1555–56, Johnson asserts that the government must plead with more specificity in a complaint for a monetary forfeiture under subsection 881(a)(6) than in complaints for non-monetary forfeitures under other subsections of section 881(a). He maintains that in a subsection 881(a)(6) action, the government, at trial, must show probable cause to believe that there is a "substantial connection" between the money to be forfeited and illegal drug activity. Johnson contends that in cases under other subsections of section 881(a), on the other hand, the government, at trial, must only show probable cause to believe that there is a "sufficient nexus" between the property to be forfeited and drug activity. Johnson therefore argues that because the government's ultimate probable cause burden at trial is more stringent in a subsection 881(a)(6) action, its burden at the pleading stage is also more stringent. Because we believe that the complaint in this case is sufficient under the allegedly more exact-

ing "substantial connection" standard, we need not address this issue. For cases from this court discussing the connection between property and drug activity required to support a non-monetary forfeiture, see *United States v. 3639–2nd St. N.E.*, 869 F.2d 1093 (8th Cir.1989) (discussing the connection between real property and drug activity required for forfeiture under 21 U.S.C. § 881(a)(7)) and *United States v. One 1976 Ford F–150 Pick-up*, 769 F.2d 525 (8th Cir.1985) (discussing the connection between a vehicle and drug activity required for forfeiture under 21 U.S.C. § 881(a)(4)).

### C. *Application of the Legal Standard*

 Although the district court accurately stated the legal standard for a section 881(a) complaint, D. Ct. Order of Dec. 11, 1991, at 5–7 ("D. Ct. Order"), we believe that it applied a more stringent standard than it stated or that Rule E(2)(a) requires. The district court correctly recognized that in a forfeiture trial the government does not have to show evidence of, or trace the money to, a particular narcotics transaction. *See, e.g., United States v. $250,000 in United States Currency*, 808 F.2d 895, 899–900 (1st Cir.1987) (citations omitted); *United States v. $4,250,000*, 762 F.2d 895, 903–04 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). Nonetheless, the district court apparently believed that it was necessary for the government's complaint to present details of a specific drug transaction or transactions, for several times in its order the court noted that the government had not specified a particular drug

---

4. In a civil forfeiture proceeding under 21 U.S.C. § 881(a), the government has the initial burden of showing probable cause to support the belief that the defendant property is connected with illegal drug activity. *See, e.g., United States v. $13,000 in United States Currency*, 733 F.2d 581, 584 (8th Cir.1984), *superseded by statute as stated in United States v. Trotter*, 912 F.2d 964, 965–66 (8th Cir.1990). In a forfeiture proceeding, probable cause is "'a reasonable ground for belief of guilt, supported by less than prima facia proof but more than mere suspicion.'" *United States v. 3639–2nd St. N.E.*, 869 F.2d 1093, 1095 (8th Cir.1989) (citations omitted). Therefore, if these standards are com-

bined, the government must allege at the complaint stage sufficient facts to provide a reasonable belief that it can show at the forfeiture proceeding a reasonable ground for the belief that the property is connected with drug activity.

Once the government has established probable cause in a forfeiture proceeding, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that some or all of the property is not traceable to illegal drug transactions and thus not subject to forfeiture. *See, e.g., One Blue 1977 AMC Jeep CJ–5 v. United States*, 783 F.2d 759, 761 (8th Cir.1986) (citations omitted).

transaction, nor any circumstances related to a particular drug transaction. D. Ct. Order at 7, 9–11. The district court also correctly noted that the government need not present direct evidence to establish probable cause in a forfeiture proceeding: circumstantial evidence and inferences therefrom are sufficient. *Id.* at 7. *See, e.g., United States v. United States Currency $31,828*, 760 F.2d 228, 230 (8th Cir. 1985) (citation omitted); *United States v. $13,000 in U.S. Currency*, 733 F.2d 581, 585 (8th Cir.1984). The district court, however, apparently totally discounted the circumstantial evidence in the complaint, stating that "[t]here is no circumstantial evidence from which to reasonably infer a drug transaction." D. Ct. Order at 7. The district court found that the only relevant evidence in the complaint was that a police detective believed that the money smelled like marijuana. *Id.* The court concluded that this evidence was insufficient to meet the particularity requirement of Rule E(2)(a). *Id.*

■ We disagree with the district court's analysis. Examining the "aggregate" of facts, and applying "common experience considerations," *$250,000 in United States Currency*, 808 F.2d at 899, we conclude that the government has alleged sufficient facts to meet the particularity requirement of Rule E(2)(a). All of the following circumstances support a reasonable belief that the government will be able to establish probable cause for forfeiture at trial.

1. Johnson purchased a one-way train ticket with cash. *See United States v. $91,960*, 897 F.2d 1457, 1462–63 (8th Cir. 1990) (finding that purchasing a one-way airplane ticket with cash is evidence of probable cause for forfeiture).

2. Johnson was carrying a large sum of cash. Several courts have held that the possession of a large amount of cash is strong evidence that the cash is connected with drug activity. *See, e.g., United States v. $93,685.61 in United States Currency*, 730 F.2d 571, 572 (9th Cir.) (per curiam) (citations omitted), *cert. denied sub nom. Willis v. United States*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984); *United States v. $364,960 in United States Currency*, 661 F.2d 319, 324 (5th Cir.1981); *see also United States v. $91,960*, 897 F.2d at 1462–63 (finding that the possession of a large sum of money is evidence of probable cause for forfeiture).

3. The bills in Johnson's briefcase were old looking and were not bound by bank money wrappers. *Cf. United States v. $12,390*, 956 F.2d 801, 806 (8th Cir.1992) (finding that currency wrapped with rubber bands provided evidence that the currency was related to drug activity). If Johnson had withdrawn the currency from the bank, as he maintains, then presumably the bills would have been new and would have had bank money wrappers around them.

4. The currency smelled like dry marijuana. *See United States v. $91,960*, 897 F.2d at 1463 (finding that a positive dog sniff is evidence of probable cause for forfeiture). Detective Dupree detected the marijuana smell immediately after he opened one of the packages of money. The narcotics detention dog confirmed his perception by indicating the presence of a controlled substance on the currency.[5]

---

5. The district court did not consider the dog sniff test as evidence, because it believed that the dog sniff was evidence derived from an illegal seizure. D. Ct. Order at 5. The district court noted that in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court held that if law enforcement officials do not have probable cause to suspect a person's luggage contains drugs, they cannot detain that luggage for 90 minutes in order to expose it to a narcotics detection dog. *Id.* The district court thus concluded that the eight-hour seizure of the luggage prior to the dog sniff constituted a seizure without probable cause and thus violated the Fourth Amendment. *Id.*

Whether the district court's conclusion is correct depends on whether the government had probable cause, at the time of recovery, to seize the currency from Johnson. Under the Fourth Amendment and 21 U.S.C. § 881(b)(4), the government had to have probable cause to believe that the currency was subject to civil forfeiture before it could legally seize it. If the government had probable cause at the time of recovery to seize the currency, then evidence, such as the dog sniff test, derived from the currency after its seizure may be considered in a forfeiture proceeding. On the other hand, if the government lacked probable cause to seize the currency, then evidence derived from the currency may not be considered. *United States v. United States Currency $31,828*, 760 F.2d 228, 230 (8th Cir.1985) (citation omitted). In deciding wheth-

5. Johnson told Detective Dupree that he was taking the money to Las Vegas to gamble, but his ticket indicated that his train was not stopping in Las Vegas. *See id.* (finding that inconsistent statements concerning the presence of money are evidence of probable cause for forfeiture).

6. Johnson told Detective Dupree that he had won the money at the race track three or four years earlier. He further explained that he had withdrawn the money from his checking account a month earlier. He did not have a receipt for the withdrawal, however, and the checking account had never had a balance greater than $5680 and had been closed for more than a year. Johnson also told Detective Dupree that he was self-employed and earned between $4000 and $5000 a month. The FBI discovered, however, that the phone number he had given for his business phone had been disconnected for twenty-one months. These facts support a reasonable inference that Johnson lacked legitimate income sufficient to enable him to accumulate some $150,000 in cash. *See United States v. One Parcel of Real Property,* 921 F.2d 370, 377 (1st Cir.1990) (finding that an affidavit asserted sufficient facts to infer that the claimants lacked legitimate income to support their expenditures); *$250,000 in United States Currency,* 808 F.2d at 899 (finding that the government's evidence demonstrated that the claimant lacked a lawful source of income). The absence of any apparent verifiable, legitimate source for the $150,660, coupled with all of the other evidence surveyed above, strongly suggests that the defendant currency was connected with drug activity. *United States v. Thomas,* 913 F.2d 1111, 1114–15 (4th Cir.1990) (citations omitted); *$250,000 in United States Currency,* 808 F.2d at 899 (citations omitted); *United States v. Brock,* 747 F.2d 761, 763 (D.C.Cir.1984).

We disagree with the district court's assertion that the complaint neither points Johnson in a direction where he can commence a meaningful investigation nor provides the framework for a meaningful response. D. Ct. Order at 9, 11. The complaint amply apprises Johnson of the circumstances that support the government's belief that the currency was connected with drug activity. Moreover, Johnson can effectively respond to the complaint by providing a credible explanation concerning the source of the currency. Johnson's response also could attempt to clear up some of the inconsistencies in his story: for example, how he withdrew $150,000 from a closed account that had never had a balance greater than $5680.

Relying on *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216 (10th Cir.1986), Johnson maintains that he does not have to provide in his answer a believable explanation of where he got the money. Johnson interprets *$39,000 in Canadian Currency* too broadly, however. In *Canadian Currency* the Tenth Circuit merely rejected the government's argument that it should only have to notice plead in a civil forfeiture case. In doing so, the court said that a general denial is not a responsive pleading within the meaning of Rule E(2)(a). *Id.* The court did not hold that an answer which provides a legitimate source for the seized currency is not a responsive pleading.

Johnson relies heavily on two cases from outside this circuit: *39,000 in Canadian Currency* and *United States v. $38,000 in United States Currency,* 816 F.2d 1538 (11th Cir.1987). The present case is easily distinguished from both of those cases, however. In *$39,000 in Canadian Currency,* the forfeiture complaints made conclusory, vague allegations with no specific factual support. 801 F.2d at 1213–15, 1220. Neither complaint in that case was accompanied by a detailed affidavit like the one in this case. Similarly, in *$38,000 in United States Currency,* the complaint and accompanying affidavit merely alleged that

er the government had probable cause to seize the currency, all of the evidence concerning Johnson that the government possessed at the time of recovery should be considered. Because all of the government's evidence may not be in the record and because the government has alleged sufficient facts, without the dog sniff test, to meet the particularity requirement, we do not determine whether the government had probable cause to seize the currency.

the Drug Enforcement Agency had seized the currency at the Atlanta International Airport from a named individual. 816 F.2d at 1548. The complaint and affidavit did not allege any other facts that suggested the currency was connected to drug trafficking. *Id.*

The facts of this case are strikingly similar to those in *United States v. $91,960,* 897 F.2d 1457 (8th Cir.1990). In *$91,960,* this court upheld the district court's finding that the government had established probable cause for forfeiture. Federal agents stopped Luis Rosario at the St. Louis International Airport. *Id.* at 1459. The agents found in Rosario's briefcase $91,960 and a notebook that appeared to contain records of drug transactions. *Id.* Rosario gave the agents conflicting explanations concerning why he was carrying the money. *Id.* Although he told the agents that he had never been arrested for a drug offense, the agents later discovered that Rosario had previously been arrested for possession of heroin. *Id.* at 1460. A sniff test of the briefcase by a police dog indicated that the briefcase had been near drugs. *Id.* Just as these facts were held to be sufficient to support a finding of probable cause, so also are the facts alleged in the complaint before us sufficient to support a reasonable belief that the government will be able to establish probable cause at trial.

Accordingly, we reverse the order dismissing the government's complaint and remand the case to the district court with directions to reinstate the complaint.

BRIGHT, Senior Circuit Judge, dissenting.

The particularity requirement of Rule E(2)(a) relating to a complaint for forfeiture does not give the Government a license to take money from a citizen, absent a showing of probable cause that the money was connected with narcotic activity. Senior United States District Judge Elmo Hunter of the Western District of Missouri, a distinguished jurist with a reputation for fairness of view and soundness of decision-making, struck the complaint for forfeiture "[b]ecause the tenuous facts recited in the affidavit are devoid of any sufficient nexus

between the defendant currency and any proscribed activity ..." Dist. Ct. Order dated December 11, 1991 at 12. I agree with this conclusion and adopt for this dissent the opinion of Judge Hunter.

State and local law enforcement agencies share in federal forfeiture proceeds. *See United States v. Trotter,* 912 F.2d 964 (8th Cir.1990) (en banc). In this forfeiture proceeding, the smell of marijuana on the currency was the only direct evidence linking the money to narcotic activity. The rights of citizens are endangered when we permit the Government to deprive a citizen of his possessions on such vacuous opinion evidence coming from a police officer whose department would receive a direct financial benefit from the forfeiture. The "smell of money" should not motivate law enforcement agencies to argue that a "smell on money" is sufficient proof of illicit narcotic activity.

Courts should be vigilant in protecting the rights of all under law. Here, Johnson need not prove where and how he received the money; this is not an Internal Revenue Service investigation. The Government must establish a connection between the money and dealing in drugs. As Judge Hunter so cogently reasoned, that connection does not exist except as a matter of imagination.

### ORDER

The suggestion for rehearing en banc is denied. The petition for rehearing is also denied. Judge BRIGHT would grant the petition.