**UNITED STATES of America, Plaintiff,**

v.

**ONE (1) 1980 CESSNA 441 CONQUEST II AIRCRAFT, Serial No. 441–01111, Venezuelan Registration No. YV–977CP, Defendant.**

No. 97–2539–CIV.

United States District Court,
S.D. Florida.

Dec. 16, 1997.

**1466**

Scott Ray, Assistant U.S. Attorney, Miami, FL, for Plaintiff.

Scott Sakin, Miami, FL, for Defendant.

## *ORDER DISMISSING COMPLAINT*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before this Court upon Claimant Louis Dona's Motion to Dismiss, filed October 30, 1997. The Government filed a response on November 14, 1997.

## *Factual Background*

The Government alleges in its Complaint that the defendant vehicle, a Cessna aircraft, is subject to forfeiture pursuant to (1) 21 U.S.C. § 881(a)(4) for being used or intended for use in a manner facilitating the sale, receipt, or possession of a controlled substance; (2) 21 U.S.C. § 881(a)(6) for constituting something of value furnished or intended to be furnished by a person in exchange for a controlled substance; and (3) 49 U.S.C. § 46306(d) for displaying a mark that is false or misleading as to the nationality or registration of the aircraft, in ·violation of 49 U.S.C. § 46306(b)(3). The Government alleges that during a drug investigation, the Drug Enforcement Administration ("DEA") learned that the defendant aircraft had been flown into Ft. Lauderdale Airport carrying a pilot, Freddy Magno ("Magno"), and two passengers, Manuel Ledezma and Luis Dona ("Dona"). The DEA discovered that the aircraft displayed the Venezuelan registration number YV–977CP but should have been registered as a Colombian aircraft with the number HK–2413P. The aircraft had been seized and impounded six years before in Colombia for its use in narcotics trafficking, and the Colombian government had no records authorizing the release of the aircraft. Nonetheless, the aircraft was acquired by several corporations in Venezuela and finally purchased by Aerocons Importaciones, S.A. ("Aerocons"), a corporation headed by Dona. The DEA discovered that Dona had an interest in all the corporations that had acquired the aircraft. When Aerocons acquired the aircraft, Dona changed the registration from YV–25CP to YV–977CP, which, according to Venezuelan officials, is illegal. The bill of sale identifies the purchaser of the aircraft as Luis Torriente–Garcia, which Venezuelan officials identified as an alias for Dona.

The Government also alleges that Antonio Korol–Hull, a former pilot of the aircraft, had been arrested for drug trafficking and aircraft theft, and that the other pilot, Magno, is known to have worked for William Antonio

Fajardo–Rodriguez, a convicted drug trafficker. The government alleges that Dona is also suspected of having drug ties. In August 1996, Venezuelan police intercepted a phone call in which Louis Torriente, Dona's alleged alias, was mentioned as a possible transporter for drugs because he had his own plane and had successfully smuggled drugs in the past.

The Government seized the aircraft on December 20, 1996, and sent a notice of seizure to Claimant several months later. On May 9, 1997, Claimant sent a claim of ownership and a $5000.00 cashier's check to the Department of Justice. The Government filed this Complaint for Forfeiture on August 6, 1997.

## Legal Standard

■ Dismissal is justified only when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

■ In civil forfeiture proceedings, a complaint for forfeiture in rem must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more particular statement, to commence an investigation of the facts and to frame a responsive pleading." Rule E(2)(a), Supp.R. Certain Adm. & Mar. Cls.; *see also United States v. Real Property & Residence*, 921 F.2d 1551, 1554 (11th Cir.1991); *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1548 (11th Cir.1987). The Government must allege facts sufficient to show that it had probable cause to believe that the defendant property is subject to forfeiture.

*$38,000.00 in U.S. Currency*, 816 F.2d at 1548; *United States v. $705,270.00 is U.S. Currency*, 820 F.Supp. 1398, 1400 (S.D.Fla. 1993). The Government establishes probable cause by showing a "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." *United States v. One Parcel of Real Estate*, 963 F.2d 1496, 1501 (11th Cir.1992) (quoting *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986)). The burden then shifts to the claimant to prove by a preponderance of the evidence that the defendant property is not subject to forfeiture. *Id.*

## Discussion

### I. Timeliness of Complaint

Claimant's first argument is that the Complaint is time barred under 21 U.S.C. § 888. This statute provides for expedited forfeiture procedures for any conveyance "seized for a drug-related offense." 21 U.S.C. § 888(a)(1). Section 888(c) requires the Government to file a complaint for forfeiture within 60 days of the posting of a bond. Claimant contends that section § 888(c) bars this suit because the defendant aircraft was seized for drug-related offenses and the Government did not file within 60 days of Claimant's posting of the bond. Both parties agree that the expedited procedures apply to conveyances seized under 21 U.S.C. § 881(a)(4) for their use or intended use to facilitate drug transactions. Consequently, the Government's claim for forfeiture pursuant to 21 U.S.C. § 881(a)(4) is time-barred.

■ The parties differ, however, on whether the expedited procedures in section 888(c) apply to conveyances seized under 21 U.S.C. § 881(a)(6) as proceeds traceable to drug trafficking. The few courts addressing this issue have come to differing conclusions on the applicability of section 888(c) to section 881(a)(6). *See, e.g., United States v. Indoor Cultivation Equip.*, 55 F.3d 1311, 1314–16 (7th Cir.1995) (strictly construing section 888(c) to apply to vehicles purchased with proceeds of drug transactions); *United States v. A 1966 Ford Mustang*, 945 F.Supp. 149, 151–52 (S.D.Ohio 1996) (holding that

section 888(c) applies only to vehicles seized under section 881(a)(4)). The Eleventh Circuit has yet to address this issue.

This Court declines to adopt the broad application given to section 888(c) by the Seventh Circuit in *Indoor Cultivation Equip.*, 55 F.3d at 1314–16. Rather, the Court is persuaded by the reasoning in *A 1966 Ford Mustang*, 945 F.Supp. at 151–52. In *Indoor Cultivation Equip.*, the Seventh Circuit broadly defined the term "drug-related offense" as it appears in section 881(a)(1) to include the laundering of drug proceeds, reasoning that the plain meaning of drug-related offense includes laundering drug proceeds. 55 F.3d at 1315. The court went on to say that exempting vehicles purchased with drug proceeds from the reach of section 888(c) would require the court to read additional terms into the statute. *Id.*

First, this Court disagrees that the "plain language" of drug-related offense necessarily includes laundering drug money. The act of laundering illegally obtained funds, itself, does not involve drugs. While one could characterize laundering drug money as a "drug-related offense," one could also reasonably characterized it as a laundering offense or an illegal funds-related offense. Thus, the term drug-related offense could reasonably include or exclude purchasing conveyances with the proceeds of drug transactions, rendering the term ambiguous on its face. *See Houghton v. Payne*, 194 U.S. 88, 99, 24 S.Ct. 590, 48 L.Ed. 888 (1904) (Statute is ambiguous when "susceptible of two reasonable interpretations").

When construing an ambiguous term in a statute, the interpreting court should endeavor to ascertain the intent of Congress. *See Merritt v. Welsh*, 104 U.S. 694, 702, 26 L.Ed. 896 (1881). In this case, Congressional intent is easy to ascertain because Congress has defined the term drug-related offense in the regulations to the statute. The regulations define drug-related offense as "any proscribed offense which involves the possession, distribution, manufacture, cultivation, sale, transfer, or the attempt or conspiracy to possess, distribute, manufacture, cultivate, sell or transfer any substance the possession of which is prohibited by Title 21,

U.S.C." 21 C.F.R. § 1316.91(d). As the court observed in *A 1966 Ford Mustang*, "This definition is confined to manufacturing and distribution offenses, and makes no reference to the money laundering aspects of drug dealing." 945 F.Supp. at 151. To adopt the broad definition urged by the Seventh Circuit, one would have to cut out much of the language of the definition ascribed to drug-related offense by the regulations and read them instead to define the term as "any proscribed offense which involves any substance the possession of which is prohibited by Title 21, U.S.C." This reading would comport with neither the plain meaning of the term, nor the meaning intended by Congress.

Moreover, the Court does not agree with the Seventh Circuit's conclusion that construing section 888 to exclude conveyances purchased with drug proceeds entails rewriting the statute. The statute is silent as to which particular section of 21 U.S.C. § 881 is governed by expedited procedures. "While it is true that Congress could have included specific language in § 888 limiting its application to forfeitures under § 881(a)(4), it could also have included language specifically referring to § 881(a)(6), but it did not do so." *A 1966 Ford Mustang*, 945 F.Supp. at 151. Consequently, courts must determine whether Congress intended to include conveyances seized under section 881(a)(6), and this Court finds that it did not.

The Seventh Circuit also opines that a "narrow interpretation of § 888(c) contravenes the statute's evident purpose [to] 'minimize the adverse impact on those entitled to legal or equitable relief occasioned by the prolonged detention of [their conveyances.]'" *Indoor Cultivation Equipment*, 55 F.3d at 1315–16 (quoting 21 C.F.R. § 1316.90). However, the regulations require that to be one of "those entitled to equitable relief" the owner must establish that he "reasonably attempted to ascertain the use of the conveyance" and that he "did not know or consent to the illegal use of the conveyance." 21 C.F.R. § 1316.95. This clearly evidences Congress' intent to protect owners of defendant conveyances that generally have legitimate uses but may have been used, unbeknownst

to the owners, for illegal purposes. Congress recognized that in certain situations where the illegal taint attaches to the *use* of the vehicle but not the vehicle as a whole, owners of the vehicles receive more protection from forfeiture.

The situation is completely different when a conveyance is purchased with the proceeds of drug transactions. Conveyances purchased with drug proceeds are no different from the proceeds themselves. *See United States v. 1992 Team Warlock 28' World Twin Hull Speedboat,* 875 F.Supp. 652, 655 (D.Ariz.1994) ("The fact that [a vehicle] is a proceed that happens to have the potential to be used as a 'conveyance' is immaterial. That is, the form of the proceed does not control how it should be characterized."). When a vehicle is purchased with drug money, the taint attaches to the vehicle, distinguishing it from the case in which the innocent vehicle is put to an illegal use. Thus the tainted vehicle should be subject to the ordinary rules of forfeiture. As one court observed:

> Because the government proceeds against allegedly tainted property in a forfeiture proceeding, it is not necessary for the government to show that the present owner of the property participated in a violation of the statute or was even aware of the violation. This is because the basic nature of a forfeiture proceeding is in rem, reflecting the legal fiction that the property itself is guilty of facilitating the crime.

*United States v. 316 Units of Municipal Sec.,* 725 F.Supp. 172, 177 (S.D.N.Y.1989) (citing *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)). Thus, exempting conveyances bought with drug proceeds from section 888(c) does not contravene Congress' intent to afford extra protection to innocent owners of vehicles that were used for illegal purposes without knowledge or consent of the owner.

Finally, exempting vehicles seized under section 881(a)(6) from section 888(c)'s expedited procedures is desirable as a matter of policy. Although the Government can investigate and formulate a complaint for forfeiture of vehicles used to transport drugs rather expeditiously, it will generally require more time to investigate and formulate a forfeiture complaint involving the tracing of laundered funds. Consequently, after careful consideration of the language, policies, and applications of 21 U.S.C. § 888, this Court finds that the statute's expedited procedures do not apply to conveyances seized pursuant to 21 U.S.C. § 881(a)(6). Accordingly, the Government's claim for forfeiture under section 881(a)(6) is not time-barred.

## II. Failure to State a Claim

 Claimant contends that the Government has not alleged facts sufficient to show that forfeiture is warranted under either 21 U.S.C. § 881(a)(6) or 49 U.S.C. § 46306(d). The Government has the burden to show that it has probable cause to believe that the conveyance is subject to forfeiture. *See $38,-000.00 in U.S. Currency,* 816 F.2d at 1548. To show probable cause to believe that the defendant conveyance was purchased with drug proceeds, the government does not have to trace the purchase money to a particular drug transaction. *See United States v. Currency in the Amount of $150,660.00,* 980 F.2d 1200, 1205 (8th Cir.1992). Rather, the Court considers the aggregation of the Government's allegations to determine whether the Complaint can survive dismissal. *See United States v. United States Currency, $83,310.78,* 851 F.2d 1231, 1235 (9th Cir.1988). In order to meet its burden, however, the Government must show that the "nexus between the property seized and the related drug offense is more than incidental or fortuitous." *United States v. Funds in the Amount of $9,800,* 952 F.Supp. 1254 (N.D.Ill.1996) (citing *United States v. 916 Douglas Ave.,* 903 F.2d 490, 494 (7th Cir.1990)).

 The Government's allegations fail to show that it had probable cause to believe that the airplane was bought with drug proceeds. Not only does the government fail to allege any facts establishing that the funds used to purchase the airplane were illicit, the Complaint does not allege any facts about the funds used to purchase the aircraft at all. In addition, the Government does not allege any facts about Dona indicating that funds he may have used to purchase the aircraft were

drug proceeds (for example, that Dona had no other sources of income). *See Funds in the Amount of $9,800,* 952 F.Supp. at 1262 ("[T]he possession of large sums of money has tended to support allegations of probable cause only where a claimant's verifiable income could not possibly account for the level of wealth displayed."). The government relies on the Venezuelan police's recounting of one intercepted conversation that refers to Dona's alleged alias as a possible drug courier. Although hearsay evidence can support probable cause, evidence still must be reliable enough to establish a nexus between the drug transaction and the property subject to forfeiture. *See Giordenello v. United States,* 357 U.S. 480, 485, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (Narcotics agent's testimony about the uncorroborated statements of others did not provide sufficient basis for probable cause); *Funds in the Amount of $9,800,* 952 F.Supp. at 1263 ("[T]he government cannot rely on innuendo and speculation about the source of the money to justify a forfeiture."). Moreover, the speculation that Dona may have been involved in drug dealing in the past does not establish probable cause to believe that the particular defendant aircraft was purchased with drug proceeds. *See United States v. $84,000 United States Currency,* 717 F.2d 1090, 1099 n. 10 (7th Cir. 1983) ("Drug courier profile" is insufficient to link funds to illegal drug activity); *Funds in the Amount of $9,800,* 952 F.Supp. at 1263 (Two prior convictions for narcotics possession did not establish probable cause that claimant purchased plane tickets with drug money).

A finding that Dona's possible connection to smuggling in the past establishes probable cause to believe that the defendant aircraft was purchased with drug proceeds would justify the Government in seizing all of a person's property, whether or not it has any evidence as to the nature of the purchases, whenever the Government procures any hearsay evidence that the owner had any past or present connection to drugs. The Government must simply allege more about the nature of the funds used to purchase the defendant aircraft. The Court finds that the facts alleged in the Complaint create "simply too thin a reed to establish the requisite nexus between the seized [conveyance] and drug activity." *Funds in the Amount of $9,800,* 952 F.Supp. at 1263.

■ Finally, Claimant asserts that the Government has not stated a claim for violation of 49 U.S.C. § 46306. Section 46306 "applies only to aircraft not used to provide air transportation." 49 U.S.C. § 46306(a). Claimant argues that the Complaint is deficient because the government has not alleged that the defendant aircraft was not used to provide air transportation. In its response to the Motion to Dismiss, the government asserts that the aircraft is not a commercial aircraft, thus subjecting it to section 46306's reach.

"Air transportation" is defined in 49 U.S.C. § 40102(a) as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." While this self-referencing definition does not shed much light on the meaning of the term, courts have defined "air transportation" with reference to public commercial use of an aircraft. *See M & R Investment Co., Inc. v. C. A. B.,* 308 F.2d 49, 51 (9th Cir.1962) (Air transportation is characterized by " 'the holding out (primarily through advertising, ticket sales, and similar activities) that the flights were available to the general public for compensation or hire' ") (quoting *Las Vegas Hacienda, Inc. v. C.A.B.,* 298 F.2d 430, 440 (9th Cir.1962)).

The record is unclear as to whether the defendant aircraft was engaged in "air transportation." Claimant has presented to the Court a Venezuelan Airplane Registration listing the aircraft as "Commercial–Private." It is not apparent whether the aircraft was used only by Dona and Aerocons or used to provide services to members of the general public. The Court need not, however, resolve the issue at this juncture. To survive dismissal the Government must, at the very least, allege that the defendant aircraft was not involved in air transportation. Absent such an allegation, the Government cannot state a claim under 49 U.S.C. § 46306.

### *Conclusion*

■ Because the Government has not alleged facts sufficient to satisfy Supp.R. Certain Adm. & Mar.Cls. E(2)(a) and Fed.

R.Civ.P. 12(b)(6), the Court finds that dismissal with leave to amend is the appropriate remedy. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1434 (11th Cir.1991).

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED the Government's Complaint for Forfeiture In Rem be, and the same is hereby, DISMISSED. The Government has twenty (20) days from the date of this order to file an Amended Complaint.