**UNITED STATES of America**

v.

**FUNDS IN THE AMOUNT OF $9,800, Defendant.**

**No. 96 C 2614.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 23, 1996.

---

Samuel D. Brooks, United States Attorney's Office, Chicago, IL, for U.S.

Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for Manuel Sanchez.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

In this civil forfeiture action arising under 21 U.S.C. § 881(a)(6), the government seeks forfeiture of $9,800 which it claims was either money furnished or intended to be furnished in exchange for a controlled substance, proceeds from the sale of a controlled substance, or money used or intended to be used to facilitate narcotics trafficking. Claimant Manuel Sanchez now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the government's complaint fails to show probable cause for the seizure. For the reasons set forth below, claimant's motion is granted without prejudice.

## FACTS

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we accept all well pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). Read in this light, the facts are as follows.

On April 7, 1995, William Grant (Grant), Special Agent with the United States Drug Enforcement Administration (DEA), was on assignment with the O'Hare Airport Task Force Group. At approximately 6:10 p.m., an unknown cooperating individual (CI) advised Grant that Manuel Sanchez (Sanchez) was departing Chicago O'Hare International Airport aboard American Airlines flight #1713 to El Paso, Texas. The CI further stated that Sanchez had purchased a round trip ticket, with cash, approximately thirty minutes before the scheduled departure time of 6:20 p.m.

Grant and Task Force agent Judy Martin (Martin) proceeded to Gate K-14, from which

flight # 1713 was scheduled to depart. Upon arriving at the gate, Grant and Martin were informed that Sanchez had already boarded the aircraft. Upon Grant's request, an American Airlines employee boarded the plane and asked Sanchez if he would mind talking with the Task Force agents. Sanchez agreed to cooperate and exited the plane.

Sanchez emerged from the jetway carrying a black suit bag. Grant and Martin identified themselves as DEA agents and displayed their credentials to Sanchez. Sanchez agreed to speak with the agents. Sanchez produced an American Airlines round trip ticket to El Paso which was issued in his name and indicated a return date of April 17, 1995. Sanchez told the agents that he was not carrying any other forms of identification. When the agents asked Sanchez why he was going to El Paso, Sanchez replied that he was going to visit some friends.

Grant proceeded to advise Sanchez that the Task Force was conducting routine narcotics investigations and that Sanchez did not have to speak with them. He further advised Sanchez that he was not under arrest and was thus free to leave at any time. Grant then told Sanchez that he would like to ask a few more questions. Sanchez agreed. Grant then asked Sanchez if he was carrying any large amounts of money. Sanchez stated that he had about $9,000 in cash, removed a white envelope containing fifty and one hundred dollar bills from his jacket pocket, and handed the envelope to Grant. The envelope had franking, stating: "Velasquez and Sons Muffler Shop, 2335 South Western Avenue, Chicago, Illinois."

When asked where he obtained the money, Sanchez stated that he earned it working in a jewelry store. After Grant asked the name of the jewelry store, Sanchez hesitated for a moment and then stated that he did not remember. Sanchez informed Grant that the store was located on the south side of Chicago. At this point, Grant told Sanchez that he believed that the money was related to narcotics trafficking and seized the money pending further investigation. Sanchez was given a receipt for the funds, which totalled $9,800.

At approximately 7:30 p.m. that evening, Task Force agents conducted a dog sniff exercise on the seized funds. A narcotics-detector dog alerted for the presence of narcotics on the money. Grant also learned that the address of Velasquez and Sons Muffler Shop, which appeared on the seized envelope, is known for frequent drug activity. Finally, DEA records showed that Sanchez had two prior arrests for the possession of narcotics.

On the basis of this information, the United States seeks the forfeiture of funds in the amount of $9,800 under 21 U.S.C. § 881(a)(6).

### DISCUSSION

In order to have a claim dismissed under Rule 12(b)(6) the moving party must meet a high standard. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not it merits. *Triad Associates Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In order to withstand a motion to dismiss a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).

A complaint for forfeiture *in rem* under § 881(a), however, is subject to the particularity requirement of Rule (E)(2)(a) of the Supplemental Rules for certain Admiralty and Maritime Claims (Supplemental Rules). 21 U.S.C. § 881(b). Supplemental Rule (E)(2)(a) provides:

*Complaint.* In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to com-

mence an investigation of the facts and to frame a responsive pleading.

Courts have agreed that Rule (E)(2)(a) requires more specificity than the simple notice pleading which is required in ordinary civil cases under Rule 8(a) of the Federal Rules of Civil Procedure. *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216 & n. 3 (10th Cir.1986). The particularity requirement is meant to ensure that a forfeiture complaint apprises potential claimants of the circumstances which support the government's seizure of property. *United States v. $15,100 in United States Currency,* No. 93–C–6800, 1994 WL 240516, at *2 (N.D.Ill. May 31, 1994). By apprising potential claimants of such circumstances, the forfeiture complaint enables claimants to commence an investigation of the facts and to respond with more than a general denial to the averments in the complaint. *United States v. One Parcel of Real Property,* 921 F.2d 370, 375 (1st Cir.1990).

▌ It is less clear whether the particularity requirement defines the standard for evaluating the sufficiency of a forfeiture complaint on a motion to dismiss. Specifically, there is considerable confusion over the relationship between Rule (E)(2)(a)'s particularity requirement and the government's obligation under the Comprehensive Drug Abuse Prevention & Control Act of 1970 (Drug Act), 21 U.S.C. § 881, to demonstrate that probable cause exists justifying forfeiture. *See, e.g. $15,100,* 1994 WL 240516, at *2 (holding that the particularity requirement of Supplemental Rule (E)(2)(a) is satisfied only if the government alleges sufficient to support a probable cause finding); *United States v. South Side Finance, Inc.,* 755 F.Supp. 791, 795 (N.D.Ill.1991) (finding that the particularity requirement and the government's obligation to demonstrate the existence of probable cause are analytically distinct tests, each of which the government must pass in order to withstand a motion to dismiss); *United States v. 10652 South Laramie,* No. 89–C–8064, 1990 WL 37230, at *4 (N.D.Ill. March 16, 1990) (holding that a motion to dismiss a civil forfeiture complaint is governed exclusively by Rule (E)(2)(a) which requires that the government plead "some supporting facts" showing a connection between the seized property and drug activity but not that the government allege facts sufficient to show probable cause).

In resolving this confusion, we adopt an approach which treats the government's burden to plead facts particular enough to satisfy Rule (E)(2)(a) as analytically distinct from its burden to plead facts sufficient to state a cause of action under the motion to dismiss standard. *See South Side Finance, Inc.,* 755 F.Supp. at 795. This standard separates the government's formal obligation to plead specific information about the circumstances underlying the seizure from its substantive obligation to allege facts sufficient to support its assertion that probable cause for the forfeiture exists. In this case, while the government has pleaded facts sufficient to satisfy the requirements of Supplemental Rule (E)(2)(a), it has failed to articulate facts which would provide a reasonable basis for its claim that there is probable cause justifying the forfeiture of defendant funds.

▌ By requiring the government to plead its claims with a specificity sufficient to allow the claimant to "commence an investigation" and "frame a responsive pleading," Supplemental Rule (E)(2)(a) was meant to establish formal pleading rules requiring more than wholly conclusory allegations that the seized property was connected with drug activity. *See United States v. 1625 S. Delaware Ave.,* 661 F.Supp. 161, 163 (E.D.Pa.1987). Most courts have agreed that in order to satisfy Supplemental Rule (E)(2)(a)'s particularity requirement, the government need only allege facts tending to support the statutory forfeiture requirements. *South Side Finance, Inc.,* 755 F.Supp. at 795; *see also 10652 South Laramie,* 1990 WL 37230, at *5. The government here has satisfied the particularity requirement by offering specific information about the date and location of the seizure, the amount of money seized, and the claimant's actions on the date of seizure. *South Side Finance, Inc.,* 755 F.Supp. at 795. This information provides the necessary details to allow the claimant to file a responsive pleading and undertake an investigation. *Id.* at 796.

The government must also meet its burden of pleading facts sufficient to set forth the essential elements of its cause of action. *Gray*, 854 F.2d at 182. Under the forfeiture provision of the Drug Act property used to commit a violation of the Act, including proceeds traceable to drug trafficking, is subject to forfeiture. *United States v. $87,-118.00*, 95 F.3d 511, 518 (7th Cir.1996). Specifically, under 21 U.S.C. § 881(a)(6), the following are subject to forfeiture: "All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter." The government, as the party seeking the forfeiture, has the initial burden of establishing probable cause to believe that the property is subject to forfeiture. *United States v. All Assets and Equip. of West Side Bldg.*, 58 F.3d 1181, 1188 (7th Cir.1995), *cert. denied, Penny v. United States*, — U.S. —, 116 S.Ct. 698, 133 L.Ed.2d 656 (1996). To discharge this burden at trial the government must establish a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." *All Assets*, 58 F.3d at 1188. Probable cause is determined on the basis of information possessed by the government at the time of the forfeiture proceeding, not the initial seizure. *United States v. $53,082.00 in United States Currency*, 985 F.2d 245, 250 (6th Cir. 1993). Once the government meets it burden, the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. *All Assets*, 58 F.3d at 1189.

However, it is clear that on a motion to dismiss the government is not required to meet its ultimate trial burden of showing probable cause for forfeiture. *United States v. Currency in the Amount of $150,660.00*, 980 F.2d 1200, 1205 (8th Cir.

1992); *see also $15,100*, 1994 WL 240516, at *2. "While the probable cause which the government must show at trial is 'a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion,' (internal citations omitted) for purposes of the complaint the allegations need only set forth a reasonable basis for believing that the property is subject to forfeiture under § 881(b)." *United States v. 3400–3410 West 16th St.*, 636 F.Supp. 142, 146 (N.D.Ill.1986) (citing *United States v. All Monies and Other Property in any and all Accounts and Certificates in the Names of Banco Cafetero Int'l*, 608 F.Supp. 1394, 1405 (S.D.N.Y.1985); *accord South Side Finance, Inc.*, 755 F.Supp. at 795.) However, we part company with many courts who interpret this standard as not requiring any showing of probable cause whatsoever. *See e.g.*, *10652 South Laramie*, 1990 WL 37230, at *5. In order to set forth a reasonable basis for believing the property is subject to forfeiture the government must allege facts which tend to show probable cause for forfeiture. This is simply because property is only subject to forfeiture for which the government can demonstrate probable cause. *All Assets*, 58 F.3d at 1188. Therefore, even though the government need not prove the actual existence of probable cause to survive a motion to dismiss, we find that the facts alleged must provide a reasonable basis for the government's belief that there is probable cause to forfeit the defendant property due to its connection with narcotics trafficking.

In order to meet this burden the government's complaint must allege facts which reasonably support a nexus between the property seized and the related drug offense that is more than incidental or fortuitous. *See United States v. 916 Douglas Ave.*, 903 F.2d 490, 494 (7th Cir.1990), *cert. denied, Born v. United States*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991).[1] The

---

1. While claimant acknowledges that the Court of Appeals for the Seventh Circuit has held that the government does not have to show a "substantial connection" between the property and underlying drug offense to justify seizure, he nevertheless urges us to follow other circuits which have adopted the "substantial connection" test. *See, e.g. U.S. v. $5000*, 40 F.3d 846, 848 (6th Cir.

1994); *U.S. v. One Parcel of Real Property*, 900 F.2d 470 (1st Cir.1990); *U.S. v. Property in Greene & Tuscaloosa Counties*, 893 F.2d 1245 (11th Cir.1990); *U.S. v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d 1093 (8th Cir.1989); *U.S. v. Santoro*, 866 F.2d 1538 (4th Cir.1989). However, the Seventh Circuit has flatly rejected the use of a "substantial connection" test in forfei-

government does not have to show evidence of, or trace the money to, a particular narcotics transaction. *$150,660.00*, 980 F.2d at 1205. Rather, the court looks at the totality of the circumstances in order to determine probable cause. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983). Therefore, the court can rely upon circumstantial and hearsay evidence to assist in establishing probable cause in a forfeiture case. *See United States v. 14128 South School Street*, 774 F.Supp. 475, 477 (N.D.Ill. 1991); *United States v. 10123 South Crandon Avenue*, No. 89–C–5078, 1991 WL 30053, at *2 (N.D.Ill., Feb. 28, 1991).

In determining whether the government has alleged facts sufficient to provide a "reasonable basis" in support of a probable cause finding, the courts have issued no clear guidelines, opting instead for a case-by-case approach focusing on fact-intensive criteria. *See United States v. $176,400.00 in U.S. Currency*, No. 90–C–3969, 1991 WL 3931, at *1 (N.D.Ill. Jan. 11, 1991). Therefore, we evaluate the sufficiency of the complaint in this case by conducting a careful comparison with other forfeiture cases which arise in similar factual contexts, noting the different procedural standards employed in each case.

 Using this method of analysis we conclude that the factual allegations the government makes in its complaint do not support a reasonable belief that the government can establish the probable cause that is necessary for forfeiture. The government must come forward with more than a "drug-courier profile" and a positive dog sniff in order to link the defendant funds to illicit drug transactions. *See United States v. $84,000 United States Currency*, 717 F.2d 1090, 1099 n. 10 (7th Cir.1983), *cert. denied, Holmes v. United States*, 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984); *United States v. $80,-760.00 in United States Currency*, 781

F.Supp. 462, 477 (N.D.Tex.1991), *aff'd* 978 F.2d 709 (5th Cir.1992).[2] The government's allegations in this case do nothing more than paint a general picture of Sanchez as loosely fitting the "drug-courier profile." These allegations cannot withstand a motion to dismiss.

First, the fact that Sanchez used cash to purchase a round trip ticket to El Paso is insufficient evidence of narcotics trafficking. We agree with claimant that the purchase of a ticket with cash is a "common, everyday and innocent travel-related activity" (mo. to dismiss, at 9–10) which cannot in itself support a probable cause finding without corroborating evidence connecting the purchase to drug activity. It is true that some courts have adverted to the cash purchase of a plane ticket just prior to a scheduled departure time as a factor relevant to determining probable cause. *See United States v. $8,120.00 in United States Currency*, No. 93–C–4338, 1994 WL 445080, at *1 (N.D.Ill. Aug. 16, 1994) (stating that claimant purchased ticket to San Diego with cash); *$15,100*, 1994 WL 240516, at *3 (finding that a cash purchase of ticket two hours before departure was one factor supporting the court's denial of claimant's motion to dismiss); *United States v. $12,900 in United States Currency*, 803 F.Supp. 1459, 1461 (S.D.Ind.1992) (finding that probable cause existed when, among other things, a nervous-looking man paid cash for a one-way ticket to a drug-source city). However, in those cases the cash purchase was ancillary to other evidence which strongly supported a finding of probable cause such as the use of an alias to deliberately deceive enforcement agents, *$8,120.00*, 1994 WL 445080, at *5, or the statement of a jail inmate that the claimant admitted the seized cash was drug-related. *$12,900*, 803 F.Supp. at 1463. Without such corroborating evidence in this case we cannot accept the cash purchase of a round trip airplane ticket

ture cases, opting instead for a less stringent "nexus" test. *U.S. v. 916 Douglas Ave.*, 903 F.2d 490, 494 (7th Cir.1990).

**2.** The seven primary characteristics of the drug-courier profile are: "(1) arrival from or departure to an identified source city; (2) carrying little or no luggage, or large quantities of empty suitcases; (3) unusual itinerary, such as rapid turnaround time for a very lengthy airplane trip;

(4) use of an alias; (5) carrying unusually large amounts of currency in the many thousands of dollars, usually on their person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers." *U.S. v. Berry*, 670 F.2d 583, 599 (5th Cir.1982) (en banc).

as evidence which reasonably supports a probable cause finding. *See e.g., $53,082.00,* 985 F.2d at 250–51 (holding that there was no probable cause supporting the forfeiture of defendant funds seized in an airport where (1) claimants nervously waited to board a plane to Dallas, Texas; (2) claimants purchased tickets the same day in cash; and (3) a dog alerted positively to the money). Further, the ticket to El Paso was for a 10-day stay, which is inconsistent with the typical itinerary of drug couriers who tend to book one-way tickets or round trips with extremely short turn-around times. *Berry,* 670 F.2d at 599.

Second, the government has offered no evidence of dishonesty that would support its forfeiture claim. The use of an alias to purchase an airplane ticket and the harboring of concealed currency have been cited as important factors in establishing a connection between seized money and drug activity. *$8,120.00,* 1994 WL 445080, at *5 (citing *$80,-760.00,* 781 F.Supp. at 477). However, in this case Sanchez did not attempt to hide either his identity or the $9,800 in cash from the DEA agents. To the contrary, Sanchez purchased his ticket in his own name and voluntarily divulged the money he was carrying when interrogated by DEA agents.

Further, the fact that Sanchez hesitated before answering that he did not remember the name of the jewelry store where he worked does not constitute a basis for finding probable cause. We may reasonably infer from the facts presented that someone who cannot remember the name of his employer is lying. However, the government is asking us to make a second inference which we believe is not supportable on the basis of the complaint. Specifically, the government wants this court to construe Sanchez's inability to remember his employer's name as evidence of a lie someone engaged in narcotics trafficking would make. While Sanchez's lack of memory may be suspicious, it does not provide an adequate foundation for establishing probable cause, which requires a threshold evidentiary showing establishing a connection between the seized funds and drug activity that rises to a level above mere suspicion.

Third, the magnitude of the money Sanchez possessed at the airport did not, in itself, justify seizure. While it is true that possession of a large sum of cash is strong evidence that the money is linked to drug activity, *$150,660.00,* 980 F.2d at 1206, the sum in this case was not sufficiently large to constitute the basis for an airport seizure. *See United States v. $191,910.00 in United States Currency,* 16 F.3d 1051, 1072 (9th Cir.1994) (stating that "[f]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity"). Further, the possession of large sums of money has tended to support allegations of probable cause only where a claimant's verifiable income could not possibly account for the level of wealth displayed. *See United States v. One 1990 Nissan 300 ZX,* No. 91–C–0440, 1991 WL 119149, at *2 (N.D.Ill. June 28, 1991) (stating that probable cause existed where defendant purchased a $14,100 car with cash at a time when he was unemployed). This is clearly not the case here since Sanchez was only carrying $9,800, an amount that is not grossly incommensurate with his purported income from his job at a jewelry store. While it is true that the government is entitled to supplement its evidence of probable cause between the filing of the complaint and the forfeiture trial, *$12,900,* 803 F.Supp. at 1465, the government cannot rely on innuendo and speculation about the source of the money to justify a forfeiture. The government has simply proffered no allegation showing that Sanchez's account of how he acquired the money was erroneous or misleading and that the real source of the money was related to drug activity.

Fourth, we find that the franking on the envelope which contained the $9,800 does not provide a reasonable basis for believing that the money was connected to narcotics trafficking. Again, the government must present some evidence tending to support its allegations of drug-related activity. While mere vagueness does not render a complaint insufficient for the purposes of a motion to dismiss, the bare uncorroborated assertion that "2235 South Western Avenue, Chicago, Illinois is an address known for frequent

drug activity" (compl. ¶ 11), does not provide a basis for probable cause. The source of the information is omitted. The reliability of the information is left to speculation. It is true that hearsay evidence can support probable cause. *10123 South Crandon Avenue*, 1991 WL 30053, at *2. However, there must be some independent objective factual basis for determining the validity of the government's assertions beyond their mere recitation by a drug agent clothed with official authority. *See Giordenello v. United States*, 357 U.S. 480, 485, 78 S.Ct. 1245, 1249–50, 2 L.Ed.2d 1503 (1958) (holding that an arrest warrant supported by a narcotics agent's sworn testimony, based on information given to him by other persons, did not provide a sufficient basis upon which a finding of probable cause could be made). The government in this case has provided no objective explanation corroborating its conclusory allegation that the address on the envelope is a site for drug-dealing. Further, the mere possession by claimant of an envelope with a purportedly drug-related franking on it is simply too thin a reed to establish the requisite nexus between the seized funds and drug activity. It is not reasonable for this court to infer from the mere fact that claimant was in possession of an envelope with a considerable sum of money that he was involved in activities proscribed by the Drug Act.

Fifth, the claimant's prior criminal record in this case does not provide a reasonable basis for finding that the seized funds were connected to drugs. While evidence of prior convictions may be probative of probable cause, *United States v. United States Currency, $83,310.78*, 851 F.2d 1231, 1236 (9th Cir.1988), evidence of a dismissed charge is not a credible indicia of current illegal activity. *United States v. $215,300 United States Currency*, 882 F.2d 417, 419 (9th Cir.1989), *cert. denied, Arboleda v. United States*, 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990). In this case, the government merely alleges that DEA records indicate that "Sanchez has a record of two prior arrests for the possession of narcotics" (compl. ¶ 14). While we must draw reasonable inferences in favor of the government on this motion to dismiss, we will not elaborate facts on behalf of the government that easily could have been presented and yet have been omitted. While

the government need not prove its case in its complaint, it must at least allege facts demonstrating how Sanchez's past criminal conduct may be relevant in establishing illicit drug trafficking conduct in this context. A skeletal assertion of claimant's prior arrests, without any indication of the disposition of the previous cases, does not suffice for this purpose.

 Finally, the positive dog sniff would not be admissible at trial to establish probable cause and therefore the government cannot use it to support its forfeiture claim. While it is true that the government need not possess all of the information required to establish probable cause for the *forfeiture* at the initial seizure, *$53,082.00*, 985 F.2d at 250, the government must still possess probable cause to justify the *initial seizure* of currency carried on claimant's person. *Id.* at 249. Probable cause "means [a] 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.'" *United States v. $67,220 in United States Currency*, 957 F.2d 280, 284 (6th Cir.1992) (internal citations omitted) The initial seizure here was based entirely upon the fact that Sanchez fit the drug-courier profile. This does not support probable cause for the seizure of defendant funds since the "drug courier profile ... lists behavior which can be attributable to perfectly legal activities, as well as illicit ones." *$53,082.00*, 985 F.2d at 249. Where evidence is obtained that is the product of an illegal initial seizure it is subject to exclusion at the forfeiture proceeding. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251–52, 14 L.Ed.2d 170 (1965). Therefore, only legally-obtained evidence may be used to establish probable cause. *$53,082.00*, 985 F.2d at 250. Here, the positive dog-sniff evidence cannot be used to show probable cause because it is the fruit of an illegal seizure and as such must be excluded.

 Even if the dog sniff in this case was not excludable as the fruit of an illegal seizure, we would refuse to find that it is a sufficient basis to establish probable cause. A growing number of courts have agreed that "[t]he presence of trace narcotics on currency does not yield any relevant information whatsoever about the currency's histo-

ry." *Jones v. United States Drug Enforcement Admin.,* 819 F.Supp. 698, 720 (M.D.Tenn.1993); *see $53,082.00,* 985 F.2d at 250, n. 5; *United States v. $639,558.00 in United States Currency,* 955 F.2d 712, 714, n. 2 (D.C.Cir.1992); *$80,760.00,* 781 F.Supp. at 475–77 (N.D.Tex.1991). Although the studies which have been conducted disagree with respect to the percentage of bills contaminated, it cannot be doubted that contaminated currency is widespread. *Jones,* 819 F.Supp. at 720. There is some indication that "residue from narcotics contaminates as much as 96% of the currency currently in circulation." *$80,760,00,* 781 F.Supp. at 475 & n. 32. "Given these facts, the continued reliance of courts and law enforcement officers on dog sniffs to separate "legitimate" currency from "drug-connected" currency is logically indefensible." *Id.* at 721. Further, a string of court decisions indicates that probable cause for forfeiture requires the government to do more than merely subject currency to a drug dog search. *See $80,760.00,* 781 F.Supp. at 476; *United States v. $53,082.00 in United States Currency,* 773 F.Supp. 26, 33–34 (E.D.Mich.1991); *United States v. $13,000 in United States Currency,* 747 F.Supp. 430, 433 (S.D.Ohio 1990); *In re Forfeiture of $18,-000,* 189 Mich.App. 1, 471 N.W.2d 628 (1991). Therefore, the government's allegation that a narcotics detection dog alerted to the seized funds does not suffice to state a cause of action for forfeiture.

▪ It is true that the aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden. *United States v. United States Currency, $83,310.78,* 851 F.2d 1231, 1235 (9th Cir. 1988). However, not only are each of the factual predicates for the government's seizure feeble when looked at singularly, we also find that the government's complaint is insufficient under a totality of the circumstances test. *Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328–29. Using this test, we find that the government's case is much weaker than other cases where courts have denied motions to dismiss forfeiture claims which arose in factually similar contexts.

For example, the court in *$176,400.00,* 1991 WL 3931, at *3, denied the claimant's motion to dismiss where the government seized $176,400.00 from two men at Chicago O'Hare International Airport who arrived after a one-day trip to Buffalo, New York. The airline records indicated that the men had purchased first class tickets at the last minute with cash. The police officers conducted a consensual search of the claimant's luggage and discovered several bundles of $100 dollar bills totaling $176,400.00. The men gave conflicting accounts of where they obtained the money and neither claimed to be employed. The currency was later tested by a narcotic detector dog, and the dog reacted positively. The court cited the lack of controlling caselaw and the disagreement among other courts in denying the motion to dismiss.

While there are some parallels with this case, we find that *$176,400.00* is distinguishable for the following reasons. Sanchez purchased a round-trip ticket in his own name to El Paso for a 10–day stay. In contrast, the claimants in *$176,400.00* arrived at O'Hare from Los Angeles, changed from dirty clothes to business suits, and then purchased first-class tickets to Buffalo, returning to O'Hare that same day. *Id.* at *1. Also, Sanchez volunteered that he was in possession of $9,800 which he earned working at a jewelry store. The claimants in *$176,400.00* gave conflicting amounts of who owned the exceedingly large amount of money they had stashed in their luggage and neither could explain the source of the money. *Id.* One of the men suggested they found the money in the airport restroom. *Id.* Thus, the claimants in *$176,400.00* engaged in unusual conduct by travelling from Los Angeles to Buffalo and back to O'Hare all in the same day and then lying to police about who owned the money. Sanchez's behavior cannot be equated with the highly suspicious *$176,400.00* claimants, where he merely purchased a round-trip ticket for a 10–day stay in El Paso with cash.

Similarly, Sanchez's behavior did not exhibit the same indicia of drug activity which warranted the court in *$15,100,* 1994 WL 240516, to deny the claimant's motion to dismiss. There, the claimant, Martin Tite, was stopped at Chicago Midway Airport by Drug Enforcement Administration Task Force Agents (TFA) and forced to hand over $15,-100 in cash, which was stashed in his pockets and socks. The court found that the following circumstances surrounding the seizure

supported a reasonable belief that the government could establish probable cause at trial:

> (1) Tite's airplane ticket was purchased with cash, for a flight departing only two hours after Tite's arrival, and the ticket was issued in the name of Raymond White, (2) Tite told TFA agents that he planned to stay in Chicago for a few days but he did not bring any luggage, (3) Tite claimed that he intended to use the $15,100 to purchase a neon sports sign, but he did not know the full name of the man from whom he intended to purchase the sign, (4) Tite stated that a portion of the money he was carrying belonged to "Tom's Signs," a business located in Alton, Illinois, but a check with Ameritech information operators revealed that there was no business with the name of "Tom's Signs" in Alton, Illinois, and finally, (5) a narcotics detection dog alerted to the presence of narcotics on the currency.

*Id.* at *3. Again, Sanchez did not engage in such a pattern of unusual conduct. Sanchez did not fly under an assumed name, a factor which other courts have emphasized in evaluating forfeiture claims. *See $8,120.00,* 1994 WL 445080, at *5. Whereas the government in *$15,100* showed that the claimant lied about the source of the money, the government here has offered no claim that Sanchez lied about his employment situation, relying on the vagueness of Sanchez's description of the jewelry store where he claimed to work as the only evidence of dissembling. The government has presented a tenuous case for forfeiture based upon the simple existence of a significant sum of money, aspects of the drug courier profile, and the response of a drug detection dog. We find that claimant has successfully shown that, based on allegations in this complaint, the government can prove no set of facts demonstrating a reasonable basis for believing that the defendant funds are subject to forfeiture under § 881(a)(6). Neither do these allegations, taken together, give rise to a reasonable inference that the defendant funds were connected to illicit narcotics transactions. *United States v. 6238 Beaver Dam Road, Matteson, Ill.,* No. 91–C–2305, 1991 WL 177693, *3 (N.D.Ill. Sept. 5, 1991). Therefore, this court grants claimant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). We do so without prejudice. The government's verified allegations stated with the particularity required by Supplemental Rule (E)(2)(a) provide a basis for a healthy suspicion but not a basis for a reasonable belief that the government can establish probable cause at trial. Perhaps there is more, but what we have now is not enough to justify going forward.

### III. *Due Process Clause*

Finally, claimant asks this court to find that the federal forfeiture statute violates the federal due process clause by authorizing the deprivation of property on the basis of a probable-cause showing. However, since we find that claimant's motion to dismiss should be granted on other grounds, we find no need to address this constitutional question.

### CONCLUSION

For the foregoing reasons, claimant's motion to dismiss is granted.