**UNITED STATES of America,**
**Plaintiff,**

v.

**FUNDS IN THE AMOUNT OF $29,266.00, Defendant.**

**No. 99 C 7888.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 8, 2000.

Scott R. Lassar, Preston Pugh, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Arthur E. Engelland, Ubi O. O'Neal, Arthur E. Engelland & Assoc., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This is an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6). The Government seeks the forfeiture of $29,266.00 that was found on the person of Frank Ezeugoji when he attempted to depart on a domestic flight from Midway Airport in Chicago, Illinois. Ezeugoji received notice of this action and an attorney has filed an appearance on his behalf. Ezeugoji moves to dismiss the complaint for failure to adequately allege a basis for forfeiture.

Section 881 contains the forfeiture provisions of the Comprehensive Drug Abuse Prevention & Control Act of 1970. It provides for forfeiture of property used to commit a violation of the Act. *United States v. $506,231 in United States Currency*, 125 F.3d 442, 451 (7th Cir.1997). Section 881(a)(6) provides that forfeiture applies to "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be

used to facilitate any violation of this subchapter."

[P]robable cause is required to initiate a forfeiture action. The probable cause threshold in a drug forfeiture case is the same as the probable cause threshold which is applicable everywhere else. The burden of proof is well-established—the government, as the party seeking the forfeiture, has the initial burden of establishing probable cause to believe the property is subject to forfeiture. To establish probable cause, the government must demonstrate a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity. The government may rely on direct evidence as well as on circumstantial and hearsay evidence. Probable cause for the forfeiture exists if the government demonstrates a *nexus* between the seized property and illegal narcotics activity. Once the government meets its burden of establishing the existence of probable cause, "the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture" by demonstrating that the property was not used in connection with drug activities.

*$506,231*, 125 F.3d at 451 (citations omitted). Additionally, as to seized money, it is not necessary to link the currency to a particular drug transaction. *United States v. One Lot of United States Currency ($36,634)*, 103 F.3d 1048, 1053 (1st Cir. 1997); *United States v. United States Currency, in the Amount of $150,660.00*, 980 F.2d 1200, 1205 (8th Cir.1992); *United States v. Funds in the Amount of $9,800*, 952 F.Supp. 1254, 1261 (N.D.Ill.1996).

The present case is not at the trial stage; it is only at the pleading stage. The government is not yet required to present its evidentiary proof that there is probable cause to believe the cash was related to drug activity. At present, the government is only required to satisfy the pleading requirements of the Federal Rules of Civil Procedure, including Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which is applicable to this proceeding. *See* 21 U.S.C. § 881(b); *United States v. All Assets & Equipment of West Side Building Corp.*, 58 F.3d 1181, 1185 n. 7 (7th Cir.1995), *cert. denied*, 516 U.S. 1042, 116 S.Ct. 698, 133 L.Ed.2d 656 (1996); *United States v. One 1993 Ford Thunderbird VIN 1FAPP62T1PH107080*, 1999 WL 436583 *2 (N.D.Ill. June 22, 1999); *$9,800*, 952 F.Supp. at 1258.

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164–65, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992). Allegations in the complaint itself, documents incorporated in the complaint, additional consistent allegations contained in the plaintiff's answer to the motion to dismiss, and facts for which judicial notice may be taken can be considered in ruling on a Rule 12(b)(6) motion. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1459, 143 L.Ed.2d 544 (1999); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n. 3 (7th Cir.1997). However, additional matters outside the pleadings that are submitted by the movant may not be considered without converting the motion to one for summary judgment. Fed.R.Civ.P. 12(b) (last sentence); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir.1999); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998). Attached to Ezeugoji's motion to dismiss are affidavits supporting that Ezeugoji received the cash from a Nigerian automobile dealer for the purpose of purchasing used cars to be resold in Nigeria, that is from a source and for a purpose

unrelated to any drug crime. However, since this is a motion to dismiss that is not being converted to a summary judgment motion, the affidavits will not be considered in ruling on the motion to dismiss. *See Fredrick v. Simmons Airlines, Inc.,* 144 F.3d 500, 504 (7th Cir.1998).

■■■ Ordinarily, a complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed.R.Civ.P. 8(a); *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Ordinarily, a plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Fed.R.Civ.P. 8(a)(2); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995); *Albiero,* 122 F.3d at 419. In the present case, however, the particularity requirements of Supplemental Rule E(2)(a) must be satisfied. That rule provides that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." However, the burden to plead facts particular enough to satisfy Rule E(2)(a) is distinct from the burden to plead facts sufficient to state a cause of action under the Rule 12(b)(6) standard. *$9,800,* 952 F.Supp. at 1259. "[T]he government's formal obligation to plead specific information about the circumstances underlying the seizure [is separate] from its substantive obligation to allege facts sufficient to support its assertion that probable cause for the forfeiture exists." *Id.* "Most courts have agreed that this particularity requirement is satisfied when the complaint 'allege[s] facts tending to support the statutory forfeiture requirements' with the 'necessary details to allow the claimant to file a responsive pleading and undertake an investigation.'" *Ford Thunderbird,* 1999 WL

436583 at *2 (quoting *$9,800,* 952 F.Supp. at 1259). The particularity requirement of Rule E(2)(a) is satisfied by providing "specific information about the date and location of the seizure, the amount of money seized, and the claimant's actions on the date of seizure." *$9,800,* 952 F.Supp. at 1259. The parties apparently are in agreement that pleading the cause of action itself is satisfied as long as the allegations set forth a reasonable basis for believing the property is subject to forfeiture. *See United States v. South Side Finance, Inc.,* 755 F.Supp. 791, 795 (N.D.Ill.1991) (citing *United States v. A Parcel of Real Property Commonly Known As: 3400–3410 West 16th Street Chicago, Illinois,* 636 F.Supp. 142, 146 (N.D.Ill.1986)) (cited by Ezeugoji as stating the pleading standard); *$9,800,* 952 F.Supp. at 1260 (quoting *West 16th Street, supra*) (the case primarily relied upon in Ezeugoji's brief); *West 16th Street, supra* (cited by the government in support of the stated standard).[1] *Accord United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844,* 50 F.Supp.2d 789, 796 (N.D.Ill.1999) (quoting *$9,800, supra*); *United States v. One 1996 Lexus LX450,* 1998 WL 164881 *2 (N.D.Ill. April 2, 1998) (quoting *West 16th Street, supra*). The "reasonable basis to believe" standard is satisfied by the allegation of facts that "tend to show probable cause for forfeiture." *1996 Lexus,* 1998 WL 164881 at *3; *$9,800,* 952 F.Supp. at 1260.

The verified complaint alleges that Ezeugoji arrived at Midway Airport at approximately 12:14 p.m. on July 6, 1998. He arrived on a flight from New York and, upon his arrival at Midway, used cash to purchase a one-way ticket to Detroit, Michigan departing at 7:50 p.m. that same day. He also had a ticket to fly from Chicago to New York on July 9. Prior to the flight to Detroit, Ezeugoji arrived at the security checkpoint with a small travel bag and a newspaper. He placed the bag on the x-ray conveyor belt and the newspa-

---

1. Since the government concedes that it must satisfy this standard, it is unnecessary to consider whether this is a higher standard than would ordinarily be applied in ruling on a Rule 12(b)(6) motion.

per over his stomach as he walked through the metal detector. The alarm on the metal detector went off and Ezeugoji was informed that he would be inspected by a hand-held metal inspector. Instead of submitting to the procedure, Ezeugoji pushed security personnel and fled, knocking more people down as he fled. Ezeugoji, however, was apprehended in the airport parking lot by Chicago police officers. The officers found the $29,266.00 that is the subject of the present proceeding hidden in a girdle and the inner pocket of Ezeugoji's suitcoat.

After the apprehension, a DEA agent was contacted who came to interview Ezeugoji after first advising him of his *Miranda* rights. Ezeugoji stated that he had flown from New York that day and that he had planned to visit a friend in Detroit that afternoon. Ezeugoji stated that the money was not his, but did not know where it came from. He said that he fled because he knew he would be in trouble for hiding more than $10,000. Ezeugoji stated that he had not worked recently and that he had been a taxi driver overseas during the prior year. A subsequent check disclosed that Ezeugoji had filed a 1997 federal income tax return showing an adjusted gross income of $5,067.00.

Ezeugoji denied having ever been arrested in the United States. A criminal records check, however, revealed two prior arrests, for illegal entry into the United States and for felony forgery and aggravated unlicensed operation of a vehicle. There is no allegation that the arrests resulted in any convictions. At the time of his apprehension, Ezeugoji had identification with two different names. He had an international drivers license issued in the name of Emmanuel Offor and a New York learner's permit in the name Frank Ezeugoji. Both forms of identification listed the same address. Ezeugoji did not respond when asked about the discrepancy between the two forms of identification.

After being issued a receipt for the funds, Ezeugoji was arrested on charges of disorderly conduct and placed in the custody of the Chicago Police Department. The seized currency was subjected to a canine sniff and the dog alerted positively to a narcotic odor.

The allegations of the complaint, including the attached affidavit of a DEA agent who participated in the investigation, clearly satisfy the E(2)(A) particularity requirement. They contain "specific information about the date and location of the seizure, the amount of money seized, and the claimant's actions on the date of seizure." *$9,800,* 952 F.Supp. at 1259. That is sufficient information to enable Ezeugoji to answer the complaint and investigate the allegations.

The other question is whether there is a reasonable basis to believe the currency is subject to forfeiture in that the factual allegations tend to show probable cause for forfeiture. The government contends that a person of limited income carrying large sums of cash, concealing the currency, fleeing when questioned, and carrying false identification and providing evasive or dishonest answers to questions, and the canine alert are sufficient to tend to show probable cause that the cash was related to a drug offense.

Possessing a large amount of cash, by itself, is not enough to establish probable cause of illegal activity. *$506,321,* 125 F.3d at 452. Neither is the fact that it happens to be hidden on a person's body. *See id.* (large sums of money and method of storage are not enough to establish probable cause). Anyone carrying large sums of cash, whether from legitimate sources or not, would be wise to hide it in some manner. Also, paying cash for the ticket to Detroit is not particularly suspicious, especially since a flight from Midway Airport in Chicago to Detroit would not necessarily have been very expensive.[2]

2. There is no allegation that the round-trip flight from New York to Chicago was pur-

chased with cash.

*See $9,800,* 952 F.Supp. at 1261. Additionally, the dog's positive response to sniffing the currency is of less probative value since a high percentage of United States currency is contaminated with narcotics residue. *See $506,231,* 125 F.3d at 453. Other evidence, however, is sufficient to at least tend to show probable cause.

 Having large sums of cash becomes suspicious when it is known that the person does not have income that corresponds with carrying such amounts. *See $150,660.00,* 980 F.2d at 1207; *United States v. One 1990 Nissan 300 ZX,* 1991 WL 119149 *2 (N.D.Ill. June 28, 1991). *Compare $9,800,* 952 F.Supp. at 1262. Here, it is alleged that Ezeugoji had only $5,067.00 in income in 1997.[3] Also, it is alleged that he admitted during his interview that he had not worked recently. Further, fleeing when being questioned or approached by law enforcement authorities is a grounds for strongly suspecting participation in illegal activity. *See Illinois v. Wardlow,* — U.S. —, —, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000); *Tom v. Voida,* 963 F.2d 952, 959 (7th Cir.1992); *United States v. Lane,* 909 F.2d 895, 899 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991); *Payton v. Rush–Presbyterian–St. Luke's Medical Center,* 82 F.Supp.2d 901, 909 (N.D.Ill.2000). Ezeugoji's carrying of false identification and his dishonest answer to whether he had previously been arrested[4] are also grounds for suspicion. *See United States v. $8,120 in United States Currency,* 1994 WL 445080 *5–6 (N.D.Ill. Aug.16, 1994). *Compare $9,800,* 952 F.Supp. at 1262. Also, at the time he was stopped, Ezeugoji provided no legitimate explanation for having the large sums of cash. The government has alleged sufficient facts to tend to show probable cause

that Ezeugoji had the cash and traveled to Chicago for an illegal purpose.

The closer question is whether it can be concluded that the illegal purpose to which the money was connected was illegal drug transactions. The government does not allege that there are any additional facts linking Ezeugoji to illegal drug activity. There is no allegation that he has any prior convictions for such activity or that he has ever been observed engaging in such activity. As previously stated, the positive alert of the dog is of minimal probative value. Still, the government need only allege facts that tend to show the existence of probable cause and probable cause itself only requires a probability, not necessarily a likelihood, that the accusations are true. Illegal drug trafficking is probably the most common of the illegal activities for which somebody engaging in illegal activity would be traveling to another city with large sums of cash and false identification. There is a sufficient probability that the illegal activity Ezeugoji may be reasonably suspected of engaging in was illegal drug transactions. The factual allegations are sufficient to tend to show probable cause that the cash seized from Ezeugoji was related to illegal drug activity.

Holding that the allegations of the complaint are sufficient does not resolve this case. The government still will have the burden of proving the existence of probable cause and, if it is successful at doing so, Ezeugoji also has the opportunity to attempt to prove, as he has indicated, that he had the money for the purpose of purchasing used cars in the United States.

IT IS THEREFORE ORDERED that Ezeugoji's motion to dismiss [6–1] is denied. Within 14 days, Ezeugoji shall an-

---

3. The specific allegation is that $5,067.00 was his adjusted gross income in 1997. Adjusted gross income does not necessarily directly correspond with legitimate earnings, but, drawing all reasonable inferences in the government's favor, it can be inferred that Ezeugoji's actual legitimate income was approximately this amount.

4. The criminal record itself, which is only alleged to contain arrests for non-drug violations and no convictions, is not a basis for suspecting involvement in drug trafficking, *see $9,800,* 952 F.Supp. at 1263, and the government does not contend otherwise.

swer the complaint. All discovery is to be completed by June 30, 2000. Status hearing will be held on July 12, 2000 at 11:00 a.m.